In re CHG INTERNATIONAL, INC., a Washington corporation, Debtor.

CHG INTERNATIONAL, INC., a Washington corporation, Plaintiff–Appellee,

v.

BARCLAYS BANK PLC, a national banking association, Defendant–Appellant.

No. C88–57D.
Bankruptcy No. 84–04251.
Adv. No. A86–08984.

United States District Court,
W.D. Washington.

April 29, 1988.

As Amended June 13, 1988.

Mark D. Northrup, Erik Rosenquist, Graham & Dunn, Seattle, Wash., for defendant-appellant.

John J. Mitchell, Lane, Powell, Moss & Miller, Seattle, Wash., for plaintiff–appellee.

## AMENDED ORDER

DIMMICK, District Judge.

Barclays Bank PLC (Barclays) appeals from an order of the Bankruptcy Court. The court granted summary judgment to the appellee here, CHG International, Inc. (CHG) and denied Barclays' earlier motion for summary judgment. The effect of the Bankruptcy Court order is to require Barclays to remit two interest payments as preferences which were made by CHG within 90 days of its filing a voluntary petition in bankruptcy. This Court now reverses.

## FACTS

CHG is a Washington development corporation, and Barclays is a national banking association. On December 5, 1984, CHG filed a voluntary petition in bankruptcy seeking relief under Chapter 11 of the United States Bankruptcy Code. Approximately two years later, CHG filed a complaint to recover preferences against the appellant Barclays.

On July 15, 1982, Barclays issued a $1,200,000 line of credit to CHG. The line of credit was represented by a promissory note and secured by a $1,200,000 certificate of deposit. The note and the certificate of deposit as security were renewed through October 1984. The entire principal of the note became due and payable on October 30, 1984. At all times relevant to this action, CHG was required to pay monthly the interest which accrued on the note. With the exception of one missed payment in June 1984, CHG paid the interest. Pay-

ments included one made on September 17, 1984, which is a subject of this action.

A second loan was made to CHG by Barclays on May 1, 1984. That loan was an eight-month term loan of $1,000,000 which was secured by two $500,000 second deeds of trust on property located in Washington. As with the first loan, the entire amount of principal was to be paid in full at the end of the eight-month term, and interest was paid monthly. Also, as with the first loan, CHG failed to make the June interest payment, but made all other monthly payments, including one on September 17, which is the other payment upon which this action is based.

The Bankruptcy Court held that the September 17, 1984 interest payments were voidable as preferences under Bankruptcy Code § 547, ordered Barclays to return the payments, and awarded prejudgment interest at 12 percent. Barclays now brings this appeal from that order.

## ISSUES PRESENTED

Barclays presents three questions on appeal:

1. Does Bankruptcy Code § 547(c) preclude avoidance as preferences of contemporaneous interest payments on a long-term loan?

2. Does Bankruptcy Code § 547(b) allow avoidance as preferences of payments made to a creditor who is fully secured?

3. Did the Bankruptcy Court abuse its discretion in determining the amount of prejudgment interest to award plaintiff?

Since this Court answers the first question in the affirmative and finds that answer dispositive of this matter, the second and third questions raised by Barclays need not be addressed. The Bankruptcy Court's conclusions of law are subject to *de novo* review. *In re American Mariner Industries, Inc.*, 734 F.2d 426 (9th Cir.1984).

There is a split of authority as to whether section 547(c)(2) allows avoidance as preferences of interest payments on long-term loans. Both appellant Barclays and appellee CHG support their arguments

with persuasive authority. The arguments are essentially as follows.

## APPELLANT BARCLAYS' ARGUMENT

Prior to 1984, section 547(c)(2) read as follows:

(c) The trustee may not avoid under this section a transfer—

. . . . .

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms;

Section 547(c) was amended in 1984. The amendment deleted the requirement, section 547(c)(2)(B), that payments be made within 45 days after the debt was incurred.

Barclays argues that since the deletion of the 45-day requirement the section 547(c)(2) exception to voidable preferences applies to payments of interest on long-term loans. This is a logical interpretation of the plain language of the section and is supported by persuasive case law and law review commentary. *See In Re Fuel Oil Supply & Terminaling, Inc.*, 72 B.R. 752, 762 (S.D. Texas 1987); *In Re Iowa Premium Service Co.*, 695 F.2d 1109, 1111 (8th Cir.1982); Nutovic, *The Bankruptcy Preference Laws: Interpreting Code §§ 547(c)(2), 550(a)(1), and 546(a)(1)*, 41 Business Law 175, 186 n. 53 (1985); Countryman, *The Concept of a Voidable Preference in Bankruptcy*, 38 Vand.L.Rev. 713, 776 (1985).

Barclays supported their summary judgment motion below with affidavits which indicated that debts were incurred and paid in the ordinary course of business according to ordinary business terms. Similarly, they have provided persuasive legal authority indicating that these payments were

made in the ordinary course of business. *See In Re Craig Oil Co.*, 785 F.2d 1563, 1566 (11th Cir.1986); *In re Economy Milling Co.*, 37 B.R. 914, 922 (D.S.C.1983).

## APPELLEE CHG'S ARGUMENT

Section 547(c)(2) was never intended to provide an exception for avoidance of preference payments on long-term loans. The interpretation of section 547(c)(2) should be based on the perceived intent of the drafters in providing the exception. The drafters intended section 547(c)(2) to complement section 547(c)(1) which provides that payments which constitute a contemporaneous exchange for goods or services are not preferential. *In re Bourgeois*, 58 B.R. 657, 659 (Bankr.W.D.La.1986).

> Long-term loans ... are not contemporaneous exchanges, but a form of capitalization which is not generally part of the debtor's day to day business activities.... "Ordinary course" refers to the debtor's normal business operations of selling goods or providing services, not borrowing money.
>
> > "[t]rade credit transactions are ... a two-way exchange. They further the policies of the Code because they allow the debtor to continue on in business and in the narrow context of ongoing trade exchange, they do not diminish the estate [of the debtor] for it is replenished by the goods or services paid for. A long-term loan is an antecedent debt in the traditional sense.... [N]othing is exchanged at the time of the payments ... which helps [the debtor] to continue in business."

*Id.* at 660, *quoting In re Acme–Dunham, Inc.*, 50 B.R. 734, 741–42 (D.Me.1985).

Alternatively, CHG contends that even if interest only payments on long-term loans are not excepted from avoidance as preferences by section 547(c)(2), Barclays never proved the loans were incurred or the payments made in ordinary course on their motion for summary judgment.

## ANALYSIS

■ Barclays' argument that section 547(c)(2) provides an exception to the trustee's avoidance power over the interest payments in question is supported by the plain language of the statute. Even granting CHG's contention that section 547(c)(2) was meant to complement section (c)(1) and applies only to contemporaneous exchanges, Barclays' argument that pure interest payments are a contemporaneous exchange is logical. Barclays points out that the service charge is computed daily for use of the loan principal and is paid contemporaneously at the end of each month. Barclays also points out that this is not a situation involving payment of an antecedent debt since interest and not the loan principal was paid.

Barclays and the cases it cites[1] have analogized the payment of interest to the payment of utility bills or the payment of rent by a tenant. Again granting CHG's contention that section 547(c) is meant to allow the debtor to continue in business, logically, the withdrawal of credit or the foreclosure on capital assets will precipitate an insolvent's slide into bankruptcy as surely as eviction from business premises or the cut off of utilities.

CHG's argument does not comport with the plain language of the statute. The unstated rationale behind its argument is probably that banks which are generally the creditors in long-term loan agreements have security interests in the assets of the debtor sufficient to at least protect their principal. On the other hand, parties involved with the debtor in short-term trade credit transactions will seldom have security interests and will lose not only their profit but their principal investment as well.

Under this rationale, the effect of avoiding preference payments is to enrich the bankrupt estate and to provide some relief for unsecured creditors. In past cases, courts have not had to admit to this hidden agenda since most long-term loan payments could be voided under the pre–1984

---

**1.** *In re Iowa Premium Serv. Co., supra* at 1111; *In re Fuel Oil Supply & Terminaling, Inc., supra* at 762.

amendment section 547(c)(2)(B) 45–day requirement.

In the first reported post–1984 amendment case of which this Court is aware, the *Bourgeois* court justified the avoidance of long-term loan payments on the ground that they were not made in the ordinary course of business. However, this reasoning is weak because section 547(c)(2) provides an exception for payments "made in the ordinary course of business *or financial affairs* ..." (Emphasis added.)

While this Court is sympathetic to unsecured creditors, the language and logical interpretation of section 547(c)(2) weigh on the side of finding for Barclays. The Court's position here was well stated by the *Iowa Premium* court:

> We are not suggesting that there are not countervailing policy considerations. When dealing with reorganization, one creditor's gain is usually another's loss. Congress could decide that banks are less in need of protection than other creditors and legislate accordingly. But a court should not make such a decision absent evidence of a congressional intent to do so, especially when the plain language and usual meaning of the words are clear. We will treat interest obligations like any other debt ...

695 F.2d at 1112.

■ Lastly, this Court addresses CHG's contention that Barclays never proved that the debts were incurred or payments made in ordinary course according to ordinary business terms as is required by section 547(c)(2). However, CHG concedes that Barclays produced by affidavit sworn testimony regarding these required elements at its (Barclays') motion on summary judgment.

CHG misstates the moving parties' burden on motion for summary judgment. A party seeking summary judgment bears the burden of informing the Court of the basis for the motion and identifying factual materials which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323,

106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to designate specific facts showing that there is a genuine issue for trial. *Id.,* 477 U.S. at 324, 106 S.Ct. at 2553.

Here Barclays met their burden. Absent a showing by CHG that the debts were not incurred, nor payments made in ordinary course, nor according to ordinary business terms the Bankruptcy Court should have concluded that no issue of material fact existed. Nothing in the record or appellee's brief indicates that CHG made a factual showing sufficient to preclude summary judgment, and indeed it was apparently the conclusion of the judge below that CHG entered into the loan transaction in the ordinary course of its business.[2]

THEREFORE, the Bankruptcy Court's judgment is REVERSED and appellant Barclays is entitled to summary judgment as a matter of law.

The Clerk of the Court shall direct copies of this Amended Order to all counsel of record and to the Bankruptcy Court.

---

**2.** Transcript of Hearing on Barclays' Motion for     Summary Judgment, at pp. 3–4.