**FIDELITY SAVINGS & INVESTMENT CO., Plaintiff–Appellant,**

v.

**NEW HOPE BAPTIST; Robert Stone; Jeffrey Alan Dietert, Defendants–Appellees.**

**No. 88–1711.**

United States Court of Appeals, Tenth Circuit.

July 25, 1989.

Thomas P. Goreson (Stephen J. Moriarty with him on the brief) of Edwards, Roberts & Propester, Oklahoma City, Okl., for plaintiff-appellant.

Thomas J. Kenan, Kenan & Peterson, Oklahoma City, Okl. (E. Elaine Schuster, Oklahoma City, Okl., and Robert Inglish of Inglish and Inglish, Okmulgee, Okl., with him on the brief), for defendants-appellees.

Before LOGAN, BRORBY and EBEL, Circuit Judges.

PER CURIAM.

This is an appeal from an order of the district court sitting as an appellate court in bankruptcy. The issue in this appeal is whether § 547(c)(2) of the Bankruptcy Code, 11 U.S.C. § 547(c)(2) (Supp. IV 1986), applies to a transfer unrelated to the payment of trade credit. Both the district and the bankruptcy courts ruled that such a transfer was within the terms of § 547(c)(2), thereby granting summary judgment for the defendants. We affirm.

## I. *Facts*

The plaintiff, Fidelity Savings & Investment Co., is an Oklahoma corporation engaged in the business of making small, high interest loans to consumers as permitted by Okla.Stat. tit. 14A, § 3–508B (1983) and as regulated by the Oklahoma Department of Consumer Credit. To fund this business, Fidelity issued certain savings certificates, which were debt obligations of the corporation bearing interest at a rate of twenty-four to thirty percent per annum, with maturity dates of six months to two years. These certificates were registered as securities with the Oklahoma Securities Commission but fell within the single state exemption under federal securities law. In 1984, a number of the certificates were sold to small investors, including the defendants New Hope Baptist, Robert Stone, and Jeffrey Dietert.

In 1985, Fidelity began experiencing financial difficulties, and the Oklahoma Securities Commission undertook an investigation of the corporation. The Commission found that Fidelity had violated the Oklahoma Securities Act, Okla.Stat. tit. 71 §§ 1–502 (1983), in that the corporation did not comply with certain terms contained in its prospectus for the sale of the certificates. In particular, the Commission noted

that the corporation was undercapitalized, that it had compensated its registered sales agent more than provided for in the prospectus, and that the corporation was insolvent due to its problems in collecting delinquent loans and its high overhead. In addition, it determined that the corporation had not followed generally accepted accounting practices in calculating its represented net worth. Based on these findings, on April 2, 1985, the Commission issued an order revoking Fidelity's registration of its securities. On June 11, 1985, Fidelity filed a voluntary petition for bankruptcy.

Before Fidelity's filing, but within the ninety-day preference period prior to bankruptcy under 11 U.S.C. § 547(b)(4)(A), the defendants' savings certificates reached maturity. As provided by the terms of the certificates, each defendant elected to receive a distribution from Fidelity representing the principal and accrued interest on the savings certificates, rather than renewing the certificates for an additional term. While the defendants were paid pursuant to the terms of their certificates, Fidelity did not pay certain other investors who had elected to receive a similar distribution. The certificates provided, however, that Fidelity could limit redemptions in any month to fifty percent of its net cash receipts during the previous month.

On September 8, 1986, Fidelity[1] instituted the instant action, seeking to recover the distributions to the defendants as preferences under § 547(b). Both Fidelity and the defendants filed cross motions for summary judgment, and the parties stipulated that the case was to be decided on the basis of these motions. The defendants admitted that the transfers met the elements of a preference under § 547(b) of the Bankruptcy Code but argued that the transfers were protected by the terms of § 547(c)(2) in that they were transfers made in the ordinary course of business. Conversely, Fidelity asserted that the ordinary course of business exception was limited to payments for trade credit, and that the defendants could not establish that the transfers met the

elements of § 547(c)(2) in light of the violations found by the Oklahoma Securities Commission.

On November 9, 1987, the bankruptcy court granted the defendants' motions for summary judgment. It ruled that the transfers fell within the § 547(c)(2) exception because they were made in payment of debts incurred by Fidelity in the ordinary course of its and the defendants' business or financial affairs, the transfers themselves were made in the ordinary course of Fidelity's business and in the ordinary course of the defendants' financial affairs, and they were made according to ordinary business terms. The court rejected Fidelity's arguments that the § 547(c)(2) exception was limited solely to protecting transfers made to trade creditors, and that revocation of Fidelity's securities registration indicated that the transfers were not made in the ordinary course of Fidelity's business. The district court thereafter affirmed on appeal. Fidelity now contends that these rulings were in error.

## II. Application of Section 547(c)(2) to Transfers Not Made to Trade Creditors

■ Fidelity's primary argument in this appeal is that § 547(c)(2) is limited to protecting only short-term trade credit payments from avoidance as a preference and that payments on other obligations, such as those at issue in this case, were never intended to fall within the scope of the ordinary course of business exception. When reviewing an order of the district court sitting as an appellate court in bankruptcy, we apply the same standard of review as the district court. The bankruptcy court's findings of fact must be upheld unless clearly erroneous; its conclusions of law are subject to de novo review. *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540, 1543 (10th Cir.1988); *In re Mullet*, 817 F.2d 677, 678–79 (10th Cir.1987). Since the bankruptcy court's interpretation of § 547(c)(2) is a matter of law, we review its conclusions de novo.

---

**1.** On July 15, 1985, the bankruptcy court approved a plan for the reorganization of Fidelity, whereby control of the corporation was vested in the holders of the savings certificates.

Section 547(b) of the Bankruptcy Code provides that a trustee in bankruptcy may avoid a transfer made to or for the benefit of a creditor on account of an antecedent debt while the debtor was insolvent that enables the creditor to receive more than he would receive if the transfer had not been made and the debtor's estate liquidated. 11 U.S.C. § 547(b)(1)–547(b)(5). Section 547(c) of the Code sets forth certain exceptions, however, to this power of the trustee. In particular, § 547(c)(2) provides,

(c) The trustee may not avoid under this section a transfer—

. . . .

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms[.]

*Id.* § 547(c)(2).

Fidelity's statutory argument is based on the fact that § 547(c)(2), prior to its amendment in 1984, applied only to transfers made in payment of a debt incurred within forty-five days before the transfer. The forty-five day limitation had generally been interpreted as indicating Congress' intent to limit application of the ordinary course of business exception to payments for trade credit. *See, e.g., Aguillard v. Bank of Lafayette (In re Bourgeois),* 58 B.R. 657, 659 (Bankr.W.D.La.1986). With the amendment of § 547(c)(2) in 1985, however, the forty-five day limitation was removed.[2] Fidelity argues that this amendment did nothing more than eliminate an arbitrary requirement that the trade credit payment be made within a certain period of time, and that it was not intended to broaden the ordinary course of business exception beyond its application to trade creditors. We

do not read the ordinary course of business exception so narrowly.

"In determining the scope of a statute, the court must begin with the statutory language itself." *Wilson v. Stocker,* 819 F.2d 943, 948 (10th Cir.1987). When the terms of the statute are clear, the statutory language is controlling absent exceptional circumstances. *Id.* As is apparent from the statutory language of § 547(c)(2) quoted above, there is no express limitation that the transfer be in payment of trade credit. The words "trade credit" appear nowhere. The sole requirements of this exception are that the transfers in question be in payment of a debt incurred in the ordinary course of the debtor and the transferee, that the transfer itself be made in the ordinary course, and that it be made according to ordinary business terms. *See WJM, Inc. v. Massachusetts Dep't of Public Welfare,* 840 F.2d 996, 1010–11 (1st Cir.1988).

We are additionally persuaded by the legislative history relevant to the amendment of this section that § 547(c)(2) was not intended to be restricted only to trade credit. While there was no explanatory statement in the Conference Report accompanying the bill enacting this amendment, the following statements of Senators DeConcini and Dole shed light on Congressional intent as to the scope of the ordinary course of business exception:

Mr. DeCONCINI: I know that the Senator from Kansas, along with the Senator from South Carolina, was the principal sponsor of this provision deleting subsection (c)(2) of section 547 of the code, and I would like to clarify two points regarding the effect of this change.

Am I correct that the elimination of the 45–day restriction in subsection (c)(2) of section 547 will relieve buyers of commercial paper with maturities in excess of 45 days of the concern that repay-

---

2. This amendment was enacted in the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 462(c), 98 Stat. 333, 378, and applies to bankruptcy cases filed after

October 8, 1984. *See Reitmeyer v. Kalinsky, P.A. (In re Sounds Distrib.),* 80 B.R. 749, 751–52 (Bankr.W.D.Pa.1987).

ments of such paper at maturity might be considered as preferential transfers?

Mr. DOLE: That is correct, assuming that the "ordinary course of business or financial affairs" and "ordinary business terms" requirements are met.

Mr. DeCONCINI: Would there be any doubt that companies that have a need for short-term funds, and investors who wish to purchase short-term obligations, would both be acting in their respective "ordinary course of business or financial affairs" if they were to deal directly or indirectly with each other in the commercial paper market? And would not the payment of a commercial paper note at maturity be in accordance with "ordinary business terms"?

Mr. DOLE: Those understandings are correct. The commercial paper market is an established market, and participants in it would presumably be acting in the ordinary course of their business or financial affairs and on the basis of ordinary business terms.

130 Cong.Rec. 20,091 (1984). While the payments at issue in this case would not qualify as payments on commercial paper because of the terms of the certificates and restrictions on negotiability, they are certainly within the spirit of such instruments. Moreover, these statements, along with evidence that Congress also considered the effect of eliminating the forty-five day requirement on payments to consumer lenders, *see* L. Broome, *Payments on Long-Term Debt as Voidable Preferences: The Impact of the 1984 Bankruptcy Amendments,* 1987 Duke L.J. 78, 104–105, unequivocally indicate that the § 547(c)(2) exception has broader application than to just trade credit payments.

We note that several courts have adopted the narrower interpretation of § 547(c)(2) urged by Fidelity in this case. The leading case in support of this position is *Aguillard v. Bank of Lafayette (In re Bourgeois),* 58 B.R. 657 (Bankr.W.D.La.1986). In *In re Bourgeois,* the trustee sought to avoid certain payments made by the debtor to the defendant bank on certain long-term loans. After a careful analysis of the history of § 547(c)(2), the court concluded that the ordinary course of business exception was always intended to exempt payments by the debtor for normal trade credit transactions, such as payments for employee wages, supplies, utilities, and rent. *Id.* at 659. It reasoned that the amendment eliminating the forty-five-day limit "was intended only to eliminate an artificial time limit, and no more[,]" so that the provisions of the Code would comport with normal trade credit cycles which often exceeded the forty-five day period. *Id.* It therefore held that the debtor's payments to the bank on its long-term loans were not covered under § 547(c)(2), because long-term loans "are not [within] the ordinary course of business of the debtor within the meaning of Section 547(c)(2)." *See also Ragsdale v. Citizens & So. Nat'l Bank (In re Control Elec., Inc.),* 91 B.R. 1010, 1016–17 (Bankr.N.D. Ga.1988); *Gosch v. Burns (In re Finn),* 86 B.R. 902, 906 (Bankr.E.D.Mich.1988). *But see Rinn v. MTA Employees Credit Union, Inc. (In re Butler),* 85 B.R. 34, 36 (Bankr.D.Md.1988) (holding that long-term loans are "unquestionably" within a consumer debtor's ordinary financial affairs).

As our discussion above indicates, we believe that *In re Bourgeois* and its progeny ignore the broad language of § 547(c)(2) and the intent that this section apply to situations outside of the trade credit arena. We are not alone in this view. *See, e.g., CHG Int'l, Inc. v. Barclays Bank PLC (In re CHG Int'l, Inc.,* 87 B.R. 647, 648 (W.D. Wash.1988) (that § 547(c)(2) applies to payments on long-term loans "is a logical interpretation of the plain language of the section …"); *In re Magic Circle Energy Corp.,* 64 B.R. 269, 273 (Bankr.W.D.Okla. 1986) (mere fact that parties' restructured debt to be long-term does not preclude § 547(c)(2) protection); 4 Collier on Bankruptcy, § 547.10 n. 4 (L. King 15th ed. 1989) (with elimination of forty-five day limit, payments on long-term obligations arguably can be excepted from preference treatment); D. DeSimone, *Section 547(c)(2) of the Bankruptcy Code: The Ordinary Course of Business Exception Without the 45 Day Rule,* 20 Akron L.Rev. 95, 129 (1986).

We are mindful of the argument, however, that excepting payments on long-term obligations often will do little to augment the debtor's prebankruptcy resources. *See, e.g., Lingley v. Stuart Shaines, Inc. (In re Acme–Dunham, Inc.),* 50 B.R. 734, 741–42 (D.Me.1985). Here, the obligations involved were for terms of one year or less. Therefore, we need not decide, and we do not decide, whether we agree with the cases cited above which infer that repayments of longer term loans that come due before bankruptcy are excepted from treatment as a preference under § 547(c)(2).

In this case, we think the analogy to commercial paper discussed in the DeConcini–Dole exchange is close. The payments on the savings certificates benefited Fidelity by enabling it to continue to raise funds through the sale of additional certificates and thereby fund further loans. Moreover, as these payments were a necessary part of Fidelity's daily business, they do not conflict with the original policy behind the ordinary course of business exception to "leave undisturbed normal financial relations" of the debtor. S.Rep. No. 989, 95th Cong., 2d Sess. 88, *reprinted in* 1978 U.S. Code Cong. & Admin.News 5787, 5874. In summary, we see no barrier to the inclusion of payments on the certificates within the ordinary course of business exception, so long as the requirements of § 547(c)(2) are met.

III. *Payments on the Savings Certificates as Within the Express Requirements of § 547(c)(2)*

■ Fidelity asserts that, even if we construe the § 547(c)(2) exception as generally applicable to the payments made to the defendants in this case, these payments did not meet the express requirements of § 547(c)(2). To except a transfer from being avoided as a preference under the ordinary course of business exception, the creditor must prove three elements: (1) that the transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, (2) that the transfer was made in the ordinary course of business or financial affairs of the debtor and

the transferee, and (3) that the transfer was made according to ordinary business terms. 11 U.S.C. § 547(c)(2). Since the bankruptcy court's determination of these issues involves findings of fact, we will not disturb these findings unless they are clearly erroneous. *Bartmann v. Maverick Tube Corp.,* 853 F.2d at 1543.

■ Based on the affidavits of the defendants, the affidavit of Mr. Greg Harrison, Fidelity's sales representative, and other materials supporting the motions for summary judgment, the bankruptcy court determined that each of the above requirements was met. First, it found that the debts represented by the savings certificates were incurred by Fidelity in the ordinary course of its business or financial affairs. We agree. Fidelity was in the business of making small, high interest consumer loans, and it was only able to do this by regularly borrowing money from small investors and then lending it out at higher interest rates. The incurrence of such debt was a regular part of its daily business, much like a bank or savings and loan institution. *See In re Control Elec., Inc.,* 91 B.R. at 1011 (incurrence of long-term loans could be considered within the ordinary course of business for a bank); *In re Bourgeois,* 58 B.R. at 660 (same). While the use of long-term debt may not be in the ordinary course of business for many industries or individuals, in this case, we believe it was. *See also Courtney v. Octopi, Inc. (In re Colonial Discount Corp.),* 807 F.2d 594, 600 (7th Cir.1986) (undertaking long-term debt an ordinary part of real estate business).

We also concur with the bankruptcy court's conclusions with regard to the remaining requirements under § 547(c)(2). The affidavits of the defendants each indicate that their investment in the savings certificates was a regular part of the management of their financial affairs. Mr. Harrison's affidavit likewise reveals that the redemption of the defendants' certificates was conducted in a regular manner, pursuant to the terms of the certificates, and without any indication that the corporation was having financial difficulties. Fi-

nally, payments on the certificates were according to ordinary business terms, exactly as provided for, and without acceleration or reduction in the payoff amount.

Fidelity does not directly controvert these findings, but instead contends they were in error in light of the Oklahoma Securities Commission's suspension of Fidelity's securities registration for violations of the Oklahoma Securities Act. Fidelity relies on several cases which have denied § 547(c)(2) protection to transfers made by the debtor arising out of transactions which, from their inception, were designed to work a fraud. *See, e.g., Graulty v. Brooks (In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.)*, 819 F.2d 214, 216–17 (9th Cir.1987) (debtor operating a "Ponzi" scheme); *Henderson v. Allred (In re Western World Funding, Inc.)*, 54 B.R. 470, 481 (Bankr.D.Nev.1985) (same); *Edmonson v. Bradford–White Corp. (In re Tinnell Traffic Servs., Inc.)*, 41 B.R. 1018, 1023 (Bankr.M.D.Tenn.1984) (debtor made restitution of payments on fraudulent invoices). We see no indication of such a scheme in this case.

Fidelity's funding of its loan operations through the sale of savings certificates was a legitimate form of capitalization, and there is no evidence of a "Ponzi scheme" or other inherently fraudulent operation. While the subsequent conduct of its business may have been deficient, these deficiencies were not so pervasive as to render the whole of Fidelity's operations outside of the ordinary course of business. *See Merrill v. Abbott (In re Independent Clearing House Co.)*, 77 B.R. 843, 875 (D.Utah 1987). We therefore concur with the bankruptcy court's findings that these transfers met the express requirements of the ordinary course of business exception.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.