In re TUCKER FREIGHT LINES, INC., Debtor.

John WALHOUT, Trustee, Plaintiff,

v.

PIPELINE OIL SALES, INC., Defendant.

Bankruptcy No. HK 83 02391.
Adv. No. 84 414.

United States Bankruptcy Court,
W.D. Michigan.

May 21, 1986.

See also, Bkrtcy., 62 B.R. 213.

John D. Huige, Hertzberg, Jacob, and Weingarten, PC., Detroit, Mich., for plaintiff.

Robert T. Kendall, III, Patch, McClafferty and Anderson, PC., Jackson, Mich., for defendant.

## OPINION

LAURENCE E. HOWARD, Bankruptcy Judge.

### PREFERENTIAL TRANSFER AND DEFENSES

The trustee seeks to avoid a transfer under 11 U.S.C. § 547(b). The defendant transferee relies upon the defenses set forth at § 547(c)(1) and (2).

The parties agreed to resolve the dispute upon briefs and a stipulation of facts. That stipulation provides in essence as follows.

It was the former practice of Tucker Freight Lines, ("Tucker") a trucking firm, to purchase diesel fuel from Pipeline Oil Sales, Inc. ("Pipeline"). The sales were made on a "load to load" basis. Under "load to load" terms, the purchaser is to pay for the load previously delivered on or before the date the seller ships the next load to the customer. However, it is a custom in the industry that payment may not be received by the seller for three days to two weeks after the next load is delivered. On or about March 29, 1983, Tucker ordered $7,277.28 worth of diesel fuel from Pipeline (Plaintiff's Exhibit 1). The diesel fuel was delivered on March 30, 1983. (Plaintiff's Exhibit 4, page 2). Also on March 30, 1983, Pipeline issued its invoice to Tucker for that purchase.[1] (Plaintiff's Exhibit 2). On June 2, 1983, Tucker ordered additional diesel fuel from Pipeline. At that time Pipeline confirmed that sales were on a "load to load" basis. On June 3, 1983, Pipeline delivered $9,045.00 worth of diesel fuel to Tucker. Pipeline contacted Tucker on June 8, 10, and 13, 1983, to inquire after the payment for the March 30, 1983, load which had been due upon the next delivery, June 3, 1983. Tucker assured Pipeline the payment was being processed and would be sent out. Tucker executed a check for $7,277.28 to Pipeline on June 18, 1983. Pipeline received the check on July 27, 1983. The check cleared banking channels on August 1, 1983. Tucker filed its petition in bankruptcy on September 16, 1983. The case is currently one under Chapter 7 of the Bankruptcy Code.

The parties have stipulated that Pipeline was a creditor of the debtor at the time the debtor made this transfer to Pipeline. (Stipulation, point 15). They have also agreed that the transfer was on account of an antecedent debt owed by the debtor to the Defendant before the transfer was made, (Stipulation, point 16), and that the debtor was insolvent at all material times. (Stipulation, point 14). Further, the parties have agreed that the transfer took place on or within 90 days before the date of the filing of the petition. (Stipulation, point 3). Lastly, they have agreed that this transfer enabled the Defendant to receive more than it would have received in a case under Chapter 7 of the Bankruptcy Code, if such transfer had not been made and the Defendant had received payment of the debt to the extent provided by the provisions of the Bankruptcy Code. (Stipulation, point

---

1. Paragraph 5 of the Stipulation gives this date as May 30, 1983. However, an examination of the actual invoice, incorporated by reference in Paragraph 5 as Plaintiff's Exhibit 2, reveals that it is dated March 30, 1983. The Court believes that the Exhibit should prevail over the Stipulation.

17). In essence, the parties have stipulated to all the elements of a preferential transfer to the defendant under 11 U.S.C. § 547(b).

■ The defendant, however, claims to find shelter in the exceptions found at § 547(c). Section 547(c)(1) provides that:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange.

According to § 547(c)(1)(A), the transfer must be intended to be a contemporaneous exchange for new value given to the debtor. The new value was received by the debtor, and the debt incurred, upon delivery of the diesel fuel on March 30, 1983. *Remes v. Acme Carton Corporation (In the Matter of Fasano/Harriss Pie Company)*, 43 B.R. 871, 876–78, 879 (Bankr.W.D. Mich.1984). The delivery of June 3, 1983, could not have been the new value because both parties clearly intended the check in question to be exchanged in return for the March 30, 1983, delivery, not the June delivery. (Stipulation, paragraphs 4–12). Yet it was not the intent of the parties to have the debtor pay for the March fuel contemporaneously with its delivery, but rather contemporaneously with the *next* delivery, whenever that might be. (Stipulation, paragraphs 6, 7 and 8). It was not until some days after the June 3, 1983, delivery that the defendant called the debtor to inquire as to the payment for the March 30, 1983, delivery. It is clear that neither party expected or intended payment to be due until at least June 3, 1983, more than two months after the underlying obligation had been incurred. This was in accord with industry practice, but the fact that an entire industry follows a policy of extending credit to purchasers until their next purchase does not render that policy one of "contemporaneous exchange." Indeed, the aim of the practice would appear to be to avoid contemporaneous exchanges, and it was the intent of Tucker and Pipeline to avoid one also.

Section 547(c)(1)(B) further requires that the exchange be in fact a substantially contemporaneous exchange. Tucker did not issue its check in payment for the March delivery until June 18, 1983. That check was not received by the defendant until July 27, 1983,[2] which for the purposes of this section must be considered the date of the transfer. *Fasano/Harriss Pie Company*, 43 B.R. at 876. Payment on July 27, 1983, cannot be characterized as substantially contemporaneous either.

■ As noted above, the June 3, delivery may not be considered the new value because the parties were not exchanging the check for the June fuel but rather intended it to be exchanged for the March fuel. That intent is determinative. *Fasano/Harriss Pie Company*, 43 B.R. at 877. However, even if the Court were able to deem the June 3 delivery as the "new value" that would be to no avail for the defendant, for it still would not be in fact substantially contemporaneous with a transfer made over seven weeks later.

■ As to the § 547(c)(2) defense, prior to the amendment of that section in 1984 it provided that a trustee could not avoid a transfer:

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the Debtor in the ordinary course of business or financial affairs of the Debtors and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms.

---

2. Neither the Stipulation nor the Briefs give any explanation for this long delay.

It is beyond question that the debt was incurred in the ordinary course of the debtor's business. The debt, however, was incurred on March 30, 1983. The debtor's check was drawn on June 18, 1983, far more than 45 days later, and the check wasn't received by the creditor until July 27, 1983, much later still. The defendant cannot hope to meet the 45 day requirement of § (c)(2). Instead, the defendant argues that it should not have to either because Congress deleted the 45 day limit in the Bankruptcy Reform Act of 1984, Pub.L. No. 98–353, or because the expansive language of subsections (c) and (d) when read together militates against a strict application of the 45 day rule. It is true that the Bankruptcy Reform Act deleted the 45 day rule of § 547(c)(2), but it also provided that the deletion would be effective only as to cases filed after its date of enactment, July 10, 1984. Pub.L. No. 98–353, § 553(a). This case was filed September 16, 1983. Therefore, the defendant must meet all four criteria. Further, the Court may not read out subparagraph (B) by reading subparagraphs (C) and (D) in such a way as to make it superflous or meaningless. *Jarecki v. Searle & Co.*, 367 U.S. 303, 307–08, 81 S.Ct. 1579, 1582–83, 6 L.Ed.2d 859 (1961). However, even if the Court were able to see its way clear to do as the defendant asks, it would be of no help to the defendant. For subparagraphs (C) and (D) require that the payment be made in the ordinary course of the debtor's business and according to ordinary business terms. Tucker's tardiness apparently exceeded the generous terms prevalent in the diesel fuel sales industry to a degree sufficient to prompt Pipeline to call three times to ask about the payment due it. Tucker finally wrote the check one day beyond the most generous limits allowed in the industry, and that check was not received until many weeks later.

## CONCLUSION

The parties have stipulated to the elements of a preferential payment to the defendant under § 547(b). The defendant cannot obtain the benefit of the § 547(c)(1) exception because the transfer was neither intended as a contemporaneous exchange for new value, nor was it in fact such a contemporaneous exchange. Nor can the defendant obtain any protection from § 547(c)(2) because the transfer was made more than 45 days after the debt was incurred. Therefore, the Trustee is entitled to judgment against the defendant.