In re SOUNDS DISTRIBUTING, INC., Debtor.

Mary REITMEYER, Trustee, Plaintiff,

v.

Norton L. KALINSKY, PA. Record Outlet, and Horovitz Rudoy & Roteman, Maurice A. Nernberg, Jr., and W. Thomas Laffey, Jr., Pittsburgh National Bank, George Kalinsky, Merrill Lynch, Pierce, Fenner & Smith, Inc., K & L Leasing, and Nernberg & Laffey, P.C., Defendants.

Bankruptcy No. 84–190.
Adv. No. 85–291.

United States Bankruptcy Court,
W.D. Pennsylvania.

Dec. 7, 1987.

Mary Reitmeyer, Pittsburgh, Pa., Trustee.

Maurice A. Nernberg, Jr., Nernberg & Laffey, P.C., Pittsburgh, Pa., pro se and for defendants.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Presently before the Court is an action brought by the Trustee to recover preferential transfers made by or on behalf of Debtor. The parties agree that the transfers in question occurred within ninety (90) days of the bankruptcy filing and that Debtor was insolvent as presumed, pursuant to 11 U.S.C. § 547(f).

Nernberg & Laffey, P.C. ("Defendant") has raised several defenses to these preferences, to-wit:

1) that the payment was in the ordinary course of business;

2) that services were performed subsequent to the transfer for which payment remains due and owing; and

3) that an attorney's charging lien has attached to certain of the transferred funds.

Based upon the testimony of the witnesses and the applicable law, we find that both transfers were preferential. In the first transfer, involving $14,920.20, Defendant does have the right to offset certain ordinary course and subsequent advance charges, requiring a return to the estate of $5,822.48; as to the second transfer of $30,439.69, Defendant cannot properly assert a charging lien on said fund. As no other defense is applicable, Defendant must return said sum to the Trustee.

## FACTS

Defendant had represented the Debtor in its various legal dealings beginning in 1974. These services were separated into two general categories: general legal rep-

resentation and services relating to various condemnation proceedings. Debtor was billed on a monthly basis for the general legal representation; however, beginning in approximately 1979, an oral arrangement was struck between Debtor and Defendant involving continued monthly billing, but annual lump sum payments. Defendant agreed to this arrangement because Debtor's business fluctuated, with his strongest months being in the pre-Christmas sales period. From that point forward, Debtor testified that he made year-end payments; this arrangement continued through November, 1983.[1]

Defendant was concurrently involved in representation of Debtor during several condemnation proceedings beginning in 1976. Defendant claims that the City of Pittsburgh ("City") originally intended to offer Debtor $200,000.00 for his property and that through Defendant's efforts, the City raised the offer to $274,385.00. Two witnesses, who had been involved with the case on behalf of the City, testified that the original offer of "estimated just compensation" was $274,385.00, and that this was the same offer made after the City issued its official Declaration of Taking. The litigation, commenced in 1976, was admittedly delayed by Defendants in the hope of increasing said offer.

On November 14, 1983, the Common Pleas Court of Allegheny County entered an Order granting possession of the property to the City upon payment of the estimated just compensation into Court.

On November 29, 1983, the City paid $261.859.94 into Court.[2]

Thereafter, on December 9, 1983, Defendants appealed on behalf of Debtor to the Commonwealth Court of Pennsylvania. No supersedeas bond was filed and the estimated just compensation being held by the Court was distributed. From that distribution Pittsburgh National Bank received $192,377.59; Defendant received $65,165.74, of which $30,439.69 was retained, and $34,726.06 was sent to Debtor.

Debtor's principal, Norton Kalinsky (hereinafter "Kalinsky") acknowledged that the parties had an understanding that Defendant would be paid for his services when the condemnation proceedings were completed; however, no fee arrangement, delineating either a percentage of contingency or an hourly rate, was ever created.

Thereafter, in May of 1984, Debtor requested Defendant to withdraw from the case, believing that the acrimonious relationship between the Defendant and the City was no longer inuring to Debtor's benefit. With the consent of the Bankruptcy Court, new counsel was employed to handle the appeal. The appeal was withdrawn and a new action commenced. A panel of viewers was appointed. Upon return of their report Debtor appealed the sum. A jury trial followed, with a verdict entered, valuing the property at $385,000.00.

## ANALYSIS

Defendant alleges that the $14,920.20 payment made in November, 1983, is excepted from the Trustee's avoiding powers pursuant to § 547(c)(2). Defendant contends that the language of the statute, as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA") is the appropriate language to employ, as this Adversary, filed in 1985, falls well past the enactment date of October 8, 1984. Several courts have held however, that the controlling date is the date that the bankruptcy petition itself was filed, not the date of the adversary proceeding. *In re Amarex, Inc.,* 74 B.R. 378 (Bankr.W.D.Okla.1987); *In re Tucker Freight Lines, Inc.,* 62 B.R. 210 (Bankr.W. D.Mich.1986); *In re Chase & Sanborn Corp.,* 51 B.R. 736 (Bankr.S.D.Fla.1985).

Defendant's argument is certainly understandable, because in order to escape the

---

**1.** It is interesting to note that while Debtor and Defendant both assert payments were made in November, Defendant's own records indicate credits generally occurring early in January, apparently for tax purposes.

**2.** This represents the estimated just compensation of $274,385.00 less municipal claims on the property.

Trustee's avoiding powers under the pre-BAFJA statute, the transfer had to be made within forty-five (45) days of the date the debt was incurred. However, as stated in *In re Chase & Sanborn, supra* at 738:

Defendant has argued that the effective date provision quoted above should be applied as though Congress has specified that the Amendment is applicable to "adversary proceedings" filed on or after October 8, 1984, rather than bankruptcy court "cases" filed after that date. This argument presupposes that Congress was unaware of the distinct meaning each of these terms has acquired in the bankruptcy law since the 1973 adoption of Bankruptcy Rules, which first introduced adversary proceedings. I reject this contention.

The statute, as we will apply it, states in pertinent part:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms;

■■■ We find that the arrangement for monthly billing and annual payment for general legal services rendered meets the requirements of (A), (C) and (D). However, only those hours spent within 45 days preceding the November, 1983 payment are applicable. No testimony was offered as to the date payment actually occurred, i.e. the date the check was delivered. As the parties agree that it was November, we use the date of November 1, 1983 as the date from which we count back, and we will allow payments for services rendered from

September 17, 1984 through October 31, 1984.

Upon examination of Defendant's time records, it appears that the hourly rate is approximately $100.00. Using said rate and including the various costs incurred and listed in the billings, Defendant is entitled to $3,102.20.

■■■ Defendant further claims setoff rights pursuant to § 547(c)(4), commonly called the Subsequent Advance Rule, which states:

(c) The trustee may not avoid under this section a transfer—

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value, the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

Although the Trustee contends that Defendant did not perform any services for Debtor between November 1, 1983 and January 27, 1984,[3] an examination of Defendant's time records clearly indicates substantial services were provided. Defendant's representative testified that these bills remain unpaid, and that they are unsecured claims.

Having examined Defendant's billing records in the same manner as discussed previously, we find that Defendant may offset $5,995.52 pursuant to § 547(c)(4).

As the transfer in question was for $14,920.20, and as Defendant was entitled to setoff a total of $9,097.72, Defendant must return the sum of $5,822.48 to the estate.

■■■ Defendant next asserts a charging lien on the funds retained from the estimated just compensation proceeds in the condemnation proceedings. The premier Pennsylvania decision in this matter is *Recht v. Urban Redevelopment Authority of*

---

**3.** This is the date of the bankruptcy filing. Any fees incurred postpetition are subject to standard fee application procedures. Further it is hornbook law that setoff of prepetition funds against postpetition debts must fail due to a lack of mutuality.

*Clairton,* 402 Pa. 599, 168 A.2d 134 (1961). After reviewing the various precedents before him, Justice Jones outlined the following criteria for recognizing a charging lien:

> It must appear (1) that there is a fund in court or otherwise applicable for distribution on equitable principles, (2) that the services of the attorney operated substantially or primarily to secure the fund out of which he seeks to be paid, (3) that it was agreed that counsel look to the fund rather than the client for his compensation, (4) that the lien claimed is limited to costs, fees, or other disbursements incurred in the litigation by which the fund was raised and (5) that there are equitable considerations which necessitate the recognition and application of the charging lien. *Recht, supra* 402 Pa. at 138–9, 168 A.2d 134.

Based upon the foregoing factors, we determine that Defendant is not entitled to a charging lien against the fund. First, we have determined after hearing the testimony of the parties and reviewing the written evidence that the City offered Debtor $274,385.00 both before and after the official Declaration of Taking, and that this figure was the product of an appraisal by the City. As said sum was in fact the amount determined by the Common Pleas Court to be just compensation, there was no fund created, in whole or in part, by Defendant.

Additionally, there was no agreement by and between the parties indicating that Defendant was to look to this fund for his services. Defendant was not billing Debtor on a monthly basis for this work, and Kalinsky admits that he knew Defendant was not to be paid until completion of the case. However, there is no indication that this case was handled on a basis wherein Defendant would be paid a percentage of the award or his hourly rate for services rendered only upon favorable decision; rather, it appears that Debtor would have been obligated to pay for these services even if it had lost.

Finally, the language used by Justice Jones indicates an overwhelming concern that the decision to grant a charging lien

be made upon equitable considerations. The fact that he used this language twice leads this Court to believe that the equitable concerns must be substantial. In the instant case, Defendant will not be providing Debtor with a windfall. In fact, the sums recovered will be distributed pro rata to all of the creditors according to their priorities.

If Debtor is Defendant's client, Defendant has thirty (30) days from the entry of this Order to file a proof of claim. If, on the other hand, Kalinsky is Defendant's client, Defendant is free to pursue any and all rights accorded him under the Constitution of the United States and the laws of this Commonwealth.

Therefore, Defendant must return the sum of $30,439.69 to the Trustee, it having been determined that said payment was in fact a preferential transfer.

An appropriate Order will be issued.