**In re BLEVINS ELECTRIC, INC., Debtor.**

**BLEVINS ELECTRIC, INC., Plaintiff,**

**and**

**United States Fidelity & Guaranty Co., Intervenor,**

**v.**

**FIRST AMERICAN NATIONAL BANK, Defendant.**

**Bankruptcy No. 94–21188.**
**Adv. No. 94–2130.**

United States Bankruptcy Court, E.D. Tennessee.

Aug. 2, 1995.

---

Fred M. Leonard, Bristol, TN, for Blevins Elec., Inc.

Hunter, Smith & Davis, William C. Argabrite, Mark S. Dessauer, Kingsport, TN, for First American Nat. Bank.

Manier, Herod, Hollabaugh & Smith, John M. Gillum, John H. Rowland, Nashville, TN, for U.S. Fidelity & Guar. Co.

## MEMORANDUM

MARCIA PHILLIPS PARSONS, Bankruptcy Judge.

This is an action by the debtor in possession, Blevins Electric, Inc. ("Blevins"), pursuant to 11 U.S.C. §§ 547 and 550, for the avoidance and recovery of certain alleged preferential transfers made by Blevins to the defendant, First American National Bank ("First American"), within the one year preceding the filing of Blevins' chapter 11 petition. This adversary proceeding is presently before the court on a partial motion to dismiss filed by First American pursuant to

Fed.R.Civ.P. 12(b)(6), as incorporated by Fed.R.Bankr.P. 7012(b). First American asserts that the portion of the complaint seeking avoidance and recovery of the transfers made between 90 days and one year prior to the bankruptcy filing (the "extended preference period") fails to state a claim upon which relief can be granted. First American notes that the ability of a debtor or trustee to recover transfers made during the extended preference period from a non-insider was eliminated by the Bankruptcy Reform Act of 1994[1] (the "94 Act"), and submits that because this adversary proceeding was commenced after the effective date of the 94 Act, this portion of the complaint must be dismissed. Since the court finds that First American's motion is without merit as set forth below, the motion will be denied.

## I.

The chapter 11 petition initiating this bankruptcy case was filed by Blevins on August 12, 1994. Some three months later, on November 18, 1994, Blevins commenced the present adversary proceeding against First American. As stated above, not only does Blevins seek the avoidance and recovery of certain transfers made by Blevins to First American during the ninety-day preference period, but also those transfers made during the extended preference period, alleging that the transfers made within the extended preference period benefitted certain insiders of

Blevins who had guaranteed the First American debt. The liability of a non-insider to disgorge transfers received from a debtor during the extended preference period to the extent that the transfers benefitted an insider[2] was first recognized in *Levit v. Ingersoll Rand Financial Corp. (In re Deprizio Const. Co.)*, 874 F.2d 1186 (7th Cir.1989), and is often referred to by the *Deprizio* name. The *Deprizio* theory of recovery has been adopted by all six circuit courts of appeals that have addressed the issue,[3] including the Sixth Circuit Court of Appeals in *Ray v. City Bank and Trust Co. (In re C–L Cartage Co., Inc.)*, 899 F.2d 1490 (6th Cir.1990).

After the filing of Blevins' chapter 11 case, but before the filing of this adversary proceeding, Congress, on October 22, 1994, enacted the Bankruptcy Reform Act of 1994. Section 202[4] of the 94 Act overrules *Deprizio* and its progeny by amending § 550 of the Bankruptcy Code to specifically provide that preferential transfers made during the extended preference period may not be recovered from a transferee that is a non-insider. The implementing section of the 94 Act indicates that the amendment to § 550 of the Code has prospective application only; it does not apply to cases commenced before October 22, 1994, the date of enactment. First American asserts that even though this chapter 11 case was initiated prior to the enactment of the 94 Act, the amendment to § 550 is applicable to this adversary proceed-

1. Pub.L. No. 103–394, 108 Stat. 4106, enacted October 22, 1994.

2. This liability is based on § 550 of the Bankruptcy Code which permits recovery of avoided preferential transfers pursuant to 11 U.S.C. § 547(b) from the initial transferee or from the entity for whose benefit the transfer was made.

3. *See Galloway v. First Alabama Bank (In re Wesley Industries, Inc.)*, 30 F.3d 1438 (11th Cir. 1994); *Official Unsecured Creditors Committee of Sufolla, Inc. v. U.S. National Bank of Oregon (In re Sufolla, Inc.)*, 2 F.3d 977 (9th Cir.1993); *Southmark Corp. v. Southmark Personal Storage, Inc. (In re Southmark Corp.)*, 993 F.2d 117 (5th Cir.1993); *Ray v. City Bank and Trust Co. (In re C–L Cartage Co., Inc.)*, 899 F.2d 1490 (6th Cir. 1990); *Lowrey v. First National Bank of Bethany (In re Robinson Brothers Drilling, Inc.)* 97 B.R. 77 (W.D.Okla.1988), *aff'd, Manufacturers Hano-*

*ver Leasing Corp. v. Lowrey (In re Robinson Bros. Drilling, Inc.)*, 892 F.2d 850 (10th Cir.1989).

4. Section 202 of the Act provides as follows:
**SEC. 202. LIMITATION ON LIABILITY OF NON–INSIDER TRANSFEREE FOR AVOIDED TRANSFER.**
Section 550 of title 11, United States Code, is amended-
(1) by redesignating subsections (c), (d), and (e) as subsections (d), (e), and (f), respectively, and
(2) by inserting after subsection (b) the following:
"(c) If a transfer made between 90 days and one year before the filing of a petition—
(1) is avoided under § 547(b) of this title; and
(2) was made for the benefit of a creditor that at the time of such transfer was an insider; the trustee may not recover under subsection (a) from a transferee that is not an insider."

ing because it was commenced after October 22, 1994. It is First American's contention that this interpretation is supported by the legislative history to the 94 Act, and that this court is precluded by the legal doctrines of *stare decisis* and the "law of the case" from rendering a contrary finding because this court in an earlier ruling in this action construed the word "cases" to exclude adversary proceedings.[5] Blevins and United States Fidelity and Guaranty Company ("USF & G"), a plaintiff-intervenor in this proceeding, oppose First American's motion. This is a core proceeding. 28 U.S.C. § 157(b)(2)(F).

## II.

An analysis of this issue must begin with an examination of the 94 Act. Section 702 of the 94 Act, which sets forth the effective date of the Act and the application of the amendments contained therein, provides as follows:

**SEC. 702. EFFECTIVE DATE; APPLICATION OF AMENDMENTS.**

(a) EFFECTIVE DATE.—Except as provided in subsection (b), this Act shall take effect on the date of the enactment of this Act.

(b) APPLICATION OF AMENDMENTS.—(1) Except as provided in paragraph (2), the amendments made by this Act shall not apply with respect to cases commenced under title 11 of the United States Code before the date of the enactment of this Act.

(2)(A) Paragraph (1) shall not apply with respect to the amendment made by section 111.

(B) The amendments made by sections 113 and 117 shall apply with respect to cases commenced under title 11 of the United States Code before, on, and after the date of the enactment of this Act.

(C) Section 1110 of title 11, United States Code, as amended by section 201 of this Act, shall apply with respect to any lease, as defined in such section 1110(c) as so amended, entered into in connection with a settlement of any proceeding in any case pending under title 11 of the United States Code on the date of the enactment of this Act.

(D) The amendments made by section 305 shall apply only to agreements entered into after the date of enactment of this Act.

Pub.L. No. 103–394, § 702, 108 Stat. 4106, 4150.

First American directs this court's attention to the directive in subsection 702(a) that the 94 Act shall take effect on its enactment and maintains that because this adversary proceeding was filed after the date of the enactment, the 94 Act, including § 202 overruling *Deprizio*, is the controlling law in this adversary proceeding. First American further asserts that the exception in subsection 702(b)(1) to the 94 Act's immediate applicability for "cases commenced under title 11 of the United States Code before the date of the enactment of this Act" does not apply to this adversary proceeding because this adversary proceeding is not a "case."

First American's argument, while disingenuous, does not pass muster. Although First American is correct that the word "case" is not synonymous with the term "adversary proceeding," neither are the words mutually exclusive. Generally, in the bankruptcy context, the word "case" is a term of art which refers to "that which is commenced by the filing of a petition; it is the 'whole ball of wax,' the chapter 7, 9, 11, 12 or 13 case." 5 COLLIER ON BANKRUPTCY ¶ 1109.02 (15th ed. 1993). Adversary proceedings, on the other hand, are subactions which are raised within a "case" and are commenced by the filing of a complaint. *See*

---

**5.** In a memorandum opinion and order entered March 22, 1995, the court allowed USF & G to permissively intervene in this adversary proceeding as a party plaintiff. In reaching that conclusion, the court considered, but rejected, USF & G's argument that it had an absolute right to intervene pursuant to Fed.R.Civ.P. 24(a)(1) and 11 U.S.C. § 1109(b). Specifically, the court "de-cline[d] to construe and extend the term 'case' in § 1109 to encompass adversary proceedings ..." *See* Mem.Op. of March 22, 1995, at p. 9. The court also noted in that memorandum opinion at n. 1 that § 202 of the 94 Act was "applicable only to bankruptcy cases filed after the date of enactment, October 22, 1994." *Id.* at p. 4.

Fed.R.Bankr.P. 7003, incorporating Fed. R.Civ.P. 3; 2 COLLIER ON BANKRUPTCY ¶ 301.03 (15th ed. 1994); *Berge v. Sweet (Matter of Berge),* 37 B.R. 705, 706 (Bankr. W.D.Wis.1983) (bankruptcy "case" commences with the filing of petition and may include a number of adversary proceedings and contested matters).

The distinction between "case" and "proceeding" in bankruptcy matters was officially recognized by Congress in the former bankruptcy rules approved by Congress in 1973. As stated in the Advisory Committee Note to former Bankruptcy Rule 101:

> A proceeding initiated by a petition for an adjudication under the Bankruptcy Act is designated a "bankruptcy case" for the purpose of these rules. The term embraces all controversies determinable by the court of bankruptcy and all matters of administration arising during the pendency of the case. . . . The word "proceeding" as used in these rules generally refers to a litigated matter arising within a case during the course of administration of an estate.

2 COLLIER ON BANKRUPTCY ¶ 301.03 (15th ed. 1994), citing 12 COLLIER ON BANKRUPTCY ¶ 101.01 (14th ed. 1978).

The bankruptcy treatise *Collier on Bankruptcy* notes that even though these terms are not defined in the Bankruptcy Code of 1978 or in the present bankruptcy rules, there is no indication that Congress in enacting the 1978 Code and subsequent amendments thereto intended a different meaning for these terms than those historically used in bankruptcy matters. 5 COLLIER ON BANKRUPTCY ¶ 1109.2 (15th ed. 1993). To the contrary, the courts have observed that Congress has continued to recognize this distinction in enacting the Bankruptcy Code of 1978 and related bankruptcy statutes. 5 COLLIER ON BANKRUPTCY ¶ 1109.02 (15th ed. 1993); *see also Fuel Oil Supply and Terminaling v. Gulf Oil Corp.,* 762 F.2d 1283, 1286–87 (5th Cir.1985) (Congress in many instances has drawn distinctions between bankruptcy "cases" and the proceedings related to them).

Thus, applying this well-recognized definition of "case" as used in the bankruptcy context to the word "case" as used in § 702 of the 94 Act, it is clear that when Congress stated in § 702 that the amendments made by the 94 Act do not apply to "cases" commenced prior to the Act's enactment, Congress was referring to the bankruptcy case which is commenced by the filing of a petition, which in this instance is the debtor's chapter 11 case. Therefore, because this chapter 11 case was commenced on August 12, 1994, before the 94 Act was enacted on October 22, 1994, the amendments to the Code contained in the 94 Act do not apply to this chapter 11 case (with the exception of those amendments referred to in § 702(b)(2)(A), (B) and (C) of the 94 Act).

First American admits in its brief that the 94 Act may not be applicable to this chapter 11 bankruptcy case, but argues that the amendment still controls this adversary proceeding by limiting the word "case" narrowly to the bankruptcy case itself and treating this adversary proceeding as an entirely separate action, such that even though the 94 Act would not apply to this chapter 11 case, it would still be applicable to this adversary proceeding. However, as stated above, "case" as traditionally used in the bankruptcy context, refers not only to that which is commenced by the filing of a petition, but also to all proceedings arising therein, such as this preference adversary proceeding.

No other result makes sense. There would be no adversary proceeding but for the filing of the case. Similarly, the *Deprizio* theory of liability never arises in the context of a "case" as the word is used in the narrow sense; instead, it only comes into play in an adversary proceeding. Therefore, as correctly observed by USF & G in its brief in opposition to First American's motion, it would be nonsensical for Congress to specify that the amendment does not apply to cases, if "cases" referred solely to the bankruptcy case itself, but not to proceedings arising therein.

In addition, under First American's analysis, if "case" does not include the adversary proceedings arising within a case, then the exception in § 702 for "cases commenced under title 11 before the date of the enactment" would not include adversary proceed-

ings, and, as a result, the implementing section of the 94 Act directing immediate effectiveness of the amendments would contain no exception for prior or pending adversary proceedings. Thus, if First American's definition of "case" is correct, the change made by § 202 of the 94 Act would be immediately applicable to all adversary proceedings, regardless of when they were filed, including proceedings commenced before the date of enactment and adversary proceedings pending as of the enactment. This result was clearly not intended by Congress as shown in the legislative history to § 702 of the 94 Act, which states that "the amendments made by the Act shall only apply prospectively, except as otherwise and specifically noted therein." Such an interpretation would also run counter to the rule of statutory construction that legislation is not to be given retroactive effect in the absence of clear Congressional intent.

Two bankruptcy courts have recently considered the issue of whether § 202 should be given retroactive effect to adversary proceedings pending on the date of the enactment. In *Rosen v. Air Forwarding Systems, Inc. (In re Air Forwarding Systems, Inc.)*, 176 B.R. 638 (Bankr.M.D.Fla.1995), and *Northeastern Contracting Co., Inc. v. John Deere Industrial Equipment Co., Inc. (In re Northeastern Contracting Co., Inc.)*, 182 B.R. 673 (Bankr.D.Conn.1995), the courts refused to retroactively apply the amendment to § 550 of the Code in bankruptcy cases filed prior to October 22, 1994. First American attempts to distinguish *Rosen* (*Northeastern Contracting* was decided after First American's brief was submitted) by observing that the adversary proceeding in *Rosen* was filed prior to the 94 Act's enactment. However, if the exception in § 702 applies only to cases, but not to proceedings arising therein, the courts in *Rosen* and *Northeastern Contracting* would have allowed retroactive application of the amendment in the adversary proceedings before those courts, there being no specific exception in § 702 for "adversary proceedings commenced before October 22, 1994." The holdings in *Rosen* and *Northeastern*

*Contracting* are understandable only if "cases" as used in § 702 encompasses adversary proceedings.

Furthermore, in the recent decision of *Pineo v. Reeves Bank (In re Hazen & Co., Inc.)*, 184 B.R. 233 (Bankr.W.D.Pa.1995), the same argument that the amendment to § 550 by § 202 of the 94 Act should be applied retroactively to an adversary proceeding commenced after October 22, 1994, was made by the defendant, and rejected by the court. As in this instance, the underlying bankruptcy case in *Hazen & Co.* was filed prior to October 22, 1994. Notwithstanding the fact that the adversary proceeding was commenced after October 22, 1994, and even though the court was not bound by the precedent of the Third Circuit to follow *Deprizio*, the court refused to retroactively apply § 202 of the 94 Act. The court noted that "[w]hile the legislative history indicates that Congress did not approve of the *Deprizio* line of cases, Congress did not take the opportunity to include section 202 in those amendments which are to be applied retrospectively. Because there is no Congressional intent which indicates otherwise, section 202 applies only prospectively." *Id.* at 235.

The argument raised by First American has also been raised by others with respect to previous amendments to the Bankruptcy Code. In a case construing the effective date of certain amendments [6] to the Bankruptcy Code which occurred in November 1990, the court in *Spencer v. Shearer (In re Shearer)*, 167 B.R. 153 (Bankr.W.D.Mo.1994), was faced with an issue and facts identical to those in the proceeding *sub judice:* which law is controlling in an adversary proceeding when an amendment to the Bankruptcy Code was enacted subsequent to the filing of the bankruptcy case, but before the adversary proceeding was commenced—the law in effect at the time the adversary proceeding was filed or at the time the case was filed. As in the present case, the implementing law of the amendment provided that the amendment would take effect upon its enactment except with respect to "cases commenced

---

**6.** Section 523(a)(9) of the Code was amended by the Criminal Victims Protection Act of 1990.

Pub.L. No. 101–581, § 4, 104 Stat. 2865 (1990).

under title 11 of the United States Code before the date of the enactment of [the] Act." [7] The *Shearer* court held that the controlling date was the date the bankruptcy case was commenced, not the date the adversary proceeding was filed, and observed that the language in the statute excluding its applicability to cases commenced before the amendment's enactment could not have been any clearer that Congress intended the amendment to be inapplicable to cases commenced prior to the effective date of the Act *and* adversary proceedings arising therein. *Id.* at 156 (emphasis supplied). As stated by the court: "[t]his court rejects any contention that this case was commenced at the filing of the adversary complaint. It is commonly understood that a case in Bankruptcy is commenced by the debtor's filing of a bankruptcy petition, and any subsequent litigation involving the debtor's bankruptcy estate, or his discharge, is simply a part of the case as a whole." *Id.* at 156 n. 1.

Similarly, the same legal issue was raised with respect to the Bankruptcy Amendments and Federal Judgeship Act of 1984, ("BAFJA") [8] which, *inter alia*, amended § 547(c)(2) of the Bankruptcy Code to delete the 45–day requirement from the ordinary course of business exception to preferences. Like the 94 Act, the amendment to sec. 547(c)(2) contained in BAFJA was applicable prospectively only, to become effective with respect to "cases" filed 90 days after BAFJA's enactment.[9] In several preference cases,[10] the courts, including one circuit court of appeals, were asked to decide whether the word "cases" as used in the implementing section of BAFJA referred to the date the bankruptcy petition was filed or the date the adversary proceeding was filed, the amendment having become effective in the interim. As in the present case, the defendants in those preference actions asserted that because the adversary proceeding was filed after the effective date of the amendment, it was a "case" to which the amendment applied. These courts unanimously agreed that the filing of the "case" referred to the filing of the petition and that the controlling law in the adversary was the law in effect at the time the petition was filed. The courts noted that to hold otherwise would result in different legal standards being applied in the same bankruptcy case due to a trustee's decision to commence adversary proceedings on separate dates. *See, e.g., In re Republic Trust and Savings Co.*, 897 F.2d at 1045. Another court noted that such a construction "would do little to foster the equality among similarly postured creditors which is at the heart of the bankruptcy policy." *In re Outlet Department Stores, Inc.*, 103 B.R. at 474. In an opinion on this issue by the late Judge Clive Bare, a distinguished jurist from this court, the court noted that if the defendants' argument were correct "the court would effectively be required to apply two different and separate acts to the same bankruptcy case; one act for the title 11 case itself and one act for proceedings and cases thereunder. This is simply unacceptable." *See In re Southern Industrial Banking Corp.*, 93 B.R. at 608.

7. Pub.L. No. 101–581, § 4, 104 Stat. 2865, (1990). Section 4 of the amendment read:
    (a) EFFECTIVE DATE.—This Act and the amendments made by this Act shall take effect on the date of enactment of this Act.
    (b) APPLICATION OF AMENDMENTS.—The amendments made by this Act shall not apply with respect to cases commenced under title 11 of the United States Code before the date of the enactment of this Act.

8. Pub.L. No. 98–353, 98 Stat. 333 (1984).

9. Section 553 of Title III of BAFJA, the implementing section setting forth the effective date of the amendment to § 547, provides in pertinent part the following:
    (a) Except as otherwise provided in this section, the amendments made by this title shall

become effective to cases filed 90 days after the date of the enactment of this Act.

10. *See Langenkamp v. Hackler (In re Republic Trust and Savings Co.)*, 897 F.2d 1041 (10th Cir.1990) (sub. history omitted); *Teitelbaum v. Stafford Phase Corp. (In re Outlet Department Stores, Inc.)*, 103 B.R. 471 (Bankr.S.D.N.Y.1989); *DuVoisin v. Howard (In re Southern Industrial Banking Corp.)*, 93 B.R. 605 (Bankr.E.D.Tenn.1987); *Amarex, Inc. v. Marathon Oil Co. (In re Amarex, Inc.)*, 88 B.R. 362 (W.D.Okla.1988); *Excel Enterprises, Inc. v. Sikes, Gardes & Co. (In re Excel Enterprises, Inc.)*, 83 B.R. 427 (Bankr. W.D.La.1988); *Reitmeyer v. Kalinsky (In re Sounds Distributing, Inc.)*, 80 B.R. 749 (Bankr. W.D.Pa.1987); *Nordberg v. Wilcafe, Inc. (In re Chase & Sanborn Corp.)*, 51 B.R. 736 (Bankr. S.D.Fla.1985).

This same issue also arose after an amendment to § 523(a)(5) of the Code by the Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35. As in the present case, the amendment by its terms became effective on the date of enactment, but contrary to the case *sub judice*, there was no exception for pending cases. Despite this notable absence, the courts considering the issue of the applicability of the amendment to an adversary proceeding filed after the effective date of the amendment held that the amendment was inapplicable to bankruptcy cases filed before the effective day of the amendment and all adversary proceedings arising therein, regardless of when the adversary proceeding was commenced. *See McDonald v. McDonald (Matter of McDonald)*, 31 B.R. 79 (Bankr.D.Neb.1983); *In re Morris*, 21 B.R. 816 (Bankr.N.D.Iowa 1982); *State of Idaho v. Hazen (In re Hazen)*, 19 B.R. 545 (Bankr.D.Idaho 1982) (sub. history omitted); *In re Flamini*, 19 B.R. 303 (Bankr.E.D.Mich. 1982), *on reh'g*, 23 B.R. 668 (1982). In reaching this conclusion, these courts relied in part on one of the overriding principles of the Bankruptcy Code, that the substantive rights of the parties are fixed on the date of the filing of the petition for relief, *see In re Hazen*, 19 B.R. at 548; *Matter of McDonald*, 31 B.R. at 80; and that to hold otherwise would remove any concept of certainty or equality of treatment under the Code.

First American attempts to circumvent this result by citing to the court a previous ruling in this adversary proceeding that the term "case" as used in § 1109 of the Code does not encompass adversary proceedings. First American argues that if the court were to hold differently in this context, and rule that the word "case" as used in § 702 of the 94 Act encompasses adversary proceedings, an inconsistent holding violative of the doctrines of *stare decisis* and the "law of the case" would result. First American's argument presupposes that the court has had before it in this case the identical issue as the one now before it. The court has not. Additionally, First American's argument illustrates the danger of citing a holding of the court out of context. As quoted by First American, this court did find in its memorandum opinion entered March 22, 1995, that the word "case" as used in § 1109 of the Bankruptcy Code did not encompass adversary proceedings. This finding was made in the context of whether an unconditional right to intervene in an adversary proceeding is conferred by § 1109(b) of the Bankruptcy Code within the context of Fed.R.Civ.P. 24(a)(1). This court adopted the conclusions of numerous courts including the Fifth Circuit Court of Appeals that Congress understood the distinction between cases under title 11 and adversary proceedings and that when Congress purposely used "case" in § 1109(b) of the Code it did not mean adversary proceedings. Those rulings by the various courts along with this court's opinion were based on the fact that in many instances Congress has drawn distinctions between bankruptcy cases and the proceedings related to them. More specifically, this ruling was made in the context of Fed.R.Bankr.P. 7024 and 2018 which set forth separate procedures for intervention in a case and intervention in an adversary proceeding. A conclusion that in the context of intervention, Congress was drawing a distinction between cases and proceedings is not inconsistent with the present finding that when Congress used the word cases in § 702 of the 94 Act, it meant not only the bankruptcy case but also all adversary proceedings and contested matters arising thereunder.

■ First American's invocation of the doctrines of *stare decisis* and "law of the case" in its attempt to bind this court is inappropriate. The doctrine of *stare decisis* is only applicable when the same or similar (similar in the sense of not being legally distinguishable) issue is before the court. As noted above, the question of whether 11 U.S.C. § 1109(b) includes adversary proceedings does not involve the same or even a similar issue as to whether the language contained in § 702 of the 94 Act as used in that context includes adversary proceedings arising out of such a case.

■ Nor does the doctrine of the "law of the case" apply. The law of the case is a discretionary rule of practice based upon sound policy that once an issue is litigated and decided, that should be the end of the

matter. *See, e.g., United States v. United States Smelting, Refining and Mining Co.,* 339 U.S. 186, 198–99, 70 S.Ct. 537, 544–45, 94 L.Ed. 750 (1950), *reh'g denied,* 339 U.S. 972, 70 S.Ct. 994, 94 L.Ed. 1379 (1950). Unlike the more precise concept of *res judicata,* the law of the case is an amorphous concept, which provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. *See Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983), *reh'g denied,* 462 U.S. 1146, 103 S.Ct. 3131, 77 L.Ed.2d 1381 (1983), *decision implemented,* 466 U.S. 144, 104 S.Ct. 1900, 80 L.Ed.2d 194 (1984). Again, First American's argument must fail since the court has not previously ruled on this same issue.

Finally, First American argues that this court should apply the present version of § 550 of the Code to this adversary proceeding because the legislative history to the 94 Act states that the amendment to § 550 is a clarification rather than a change in the law. In commenting on § 202 of the 94 Act, Senator Grassley stated:

> Our legislation overrules the *Deprizio* line of decisions and clarifies Congressional intent that non-insider transferees should not be subject to the preference provisions of the Bankruptcy Code beyond the 90 day statutory period.

140 Cong.Rec. S14461 (daily ed. Oct. 6, 1994).

In support of this contention, First American cites the case of *Pereira v. Lehigh Savings Bank, SLA (In re Artha Management, Inc.),* 174 B.R. 671 (Bankr.S.D.N.Y.1994), wherein the court gave retroactive application to the 94 Act by refusing to apply the *Deprizio* doctrine to the adversary proceeding before it in light of the legislative history to § 202 of the 94 Act indicating that the purpose of § 202 was to clarify Congressional intent with respect to § 550. However, as recognized by the court in *Rosen,* "when *Pereira* was decided, the Second Circuit Court of Appeals had not ruled on the *Deprizio* issue." *In re Rosen,* 176 B.R. at 639. Thus, the trial court in *Pereira* was not bound by any higher court and was free to render its own interpretation of § 550. The

*Rosen* court, however, noted that in the case before it, it did not have the discretion to independently interpret § 550 or examine Congress' interpretation of § 550 because it was bound by the Eleventh Circuit's acceptance of *Deprizio. Id. See also In re Hazen & Co., Inc.,* 184 B.R. at 235 (court applied *Deprizio* doctrine notwithstanding 94 Act and lack of Third Circuit authority on the issue since the literal interpretation required it); *In re Northeastern Contracting Company, Inc.,* 182 B.R. 673 (court applied *Deprizio* doctrine notwithstanding 94 Act and lack of Second Circuit authority on the issue since (1) the six circuits which had considered the issue had unanimously adopted *Deprizio;* and (2) § 550 was capable of no other interpretation than that reached by *Deprizio*); *Mazze v. Wilmington Savings Fund Society, F.S.B. (In re Austin Truck Rental, Inc.),* 177 B.R. 827, 837 (Bankr.E.D.Pa.1995), *rev'd on other grounds,* 183 B.R. 398 (E.D.Pa.1995) (even though not bound by precedent from the Third Circuit, the court declined to apply the amendment to § 550 because *Deprizio* and its progeny provided the correct interpretation of §§ 547 and 550 as they existed prior to the 94 Act); *Hovis v. Powers Construction Co., Inc. (In re Hoffman Associates, Inc.),* 179 B.R. 797 (Bankr.D.S.C.1995) (enactment of Act did not indicate that rule of *Deprizio* was not then the law, applicable to cases already pending).

Like the court in *Rosen,* this court is bound by the precedent of the Sixth Circuit Court of Appeals, as established in *C–L Cartage,* to follow the *Deprizio* doctrine in bankruptcy cases filed before October 22, 1994, and in adversary proceedings arising therefrom. The Sixth Circuit Court of Appeals' adoption of *Deprizio* in *C–L Cartage* was based on a "literal reading" of § 550(a)(1) whereby the court concluded that such a result "flowed directly from an application of the unambiguous statutory language." *In re C & L Cartage Co.,* 899 F.2d at 1494. The Sixth Circuit noted in *C & L Cartage* that on its face § 550 makes no distinction between insiders and non-insiders and that it was bound to follow the literal reading of the law. *Id.* In light of the Sixth Circuit's express ruling on this issue, this court is bound by

the Sixth Circuit's conclusion that a literal reading of the version of § 550 in effect on August 12, 1994, the date this chapter 11 case was filed, clearly permits the recovery sought in this proceeding, regardless of Congress' present statement as contained in the 94 Act that it did not intend the *Deprizio* result in enacting § 550 of the Code. This court has no authority to apply the amendment to § 550 as set forth in the 94 Act to this adversary proceeding.

The foregoing constitutes findings of fact and conclusions of law pursuant to Fed. R.Bankr.P. 7052. The court will enter an order in accordance with this memorandum denying the defendant's partial motion to dismiss.