In re Monty L. BALL, Dixie
R. Ball, Debtors.

J. Michael Morris, Trustee, Plaintiff,

v.

General Motors Acceptance Corporation, Monty L. Ball and Dixie
R. Ball, Defendants.

Bankruptcy No. 01–12954.
Adversary No. 01–5148.

United States Bankruptcy Court,
D. Kansas.

Aug. 7, 2002.

J. Michael Morris, Wichita, KS, pro se.

Connie J. Nordboe–Tinker, Robbins, Tinker, Smith & Tinker, Wichita, KS, for General Motors Acceptance Corp.

Ronald J. Sickmann, Wichita, KS, for Monty L. Ball and Dixie R. Ball.

## MEMORANDUM OPINION

ROBERT E. NUGENT, Bankruptcy Judge.

This is an adversary proceeding pursuant to 11 U.S.C. § 547[1] to avoid General Motors Acceptance Corporation's ("GMAC") lien in the debtors' 2000 Chevrolet Tahoe. The Trustee contends that perfection of GMAC's lien in the debtors' vehicle constitutes a preference under § 547(b) and is avoidable. The debtors purchased the vehicle in Oklahoma but promptly brought the vehicle to Kansas where they reside. The issues presented are: (1) whether Oklahoma law or Kansas law governs the issue of perfection; and (2) when GMAC became perfected.

The trustee contends that under the multistate transaction provision of Kan. Stat. Ann. § 84–9–103(2)(b) (1996), Kansas law governs the issue of perfection because only Kansas issued a certificate of title for the vehicle. The trustee reasons that since GMAC perfected its lien under Kansas law, at the earliest, on the date of the

---

[1]. All statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq. unless otherwise specified.

Kansas title application, its perfection was within ninety (90) days of the debtors' bankruptcy filing. GMAC, applying Oklahoma law, contends that it perfected its lien within the twenty (20) day safe harbor provision of § 547(c)(3) and therefore, the trustee may not avoid its lien in the vehicle.

This case was submitted to the Court upon stipulated facts and exhibits and the briefs of the parties. The Court has reviewed the parties' submissions and is now prepared to rule. The controlling facts are as follow.

The debtors reside in Goddard, Kansas. On May 13, 2000 the debtors entered into a purchase agreement, security agreement and retail installment contract for the purchase of a 2000 Chevrolet Tahoe from a dealership in Oklahoma. The note and security interest were assigned by the Oklahoma dealership to GMAC. The vehicle arrived in Kansas on May 19 or May 20.

On May 13, 2000, the Oklahoma dealership executed a lien entry form under Oklahoma law. The lien entry form reflected the lien in the debtors' vehicle and that GMAC was the assignee of the secured party. The lien entry form also indicated the debtors' Kansas address. On May 24, 2000, the lien entry form, together with an application for an Oklahoma certificate of title for a vehicle, a certificate of origin, and an odometer disclosure statement were delivered to a motor license agent with the Oklahoma division of motor vehicles. The application for an Oklahoma certificate of title was not signed by the debtors although they were shown as owners on the application.

On May 24, 2000, the Oklahoma Tax Commission ("OTC") issued a lien receipt with respect to the debtors' vehicle. The lien receipt shows a lien fee of $10.00 was paid, that GMAC is the lien holder, and a lien date of May 24, 2000. No certificate of title was ever issued by the Oklahoma authorities.

On June 14, 2000, the debtors applied for a Kansas certificate of title on the vehicle. A Kansas certificate of title was issued on July 12, 2000. GMAC's lien is noted on the Kansas certificate of title.

On August 2, 2000, the debtors filed for bankruptcy relief under Chapter 7. On July 6, 2001, the trustee filed his adversary complaint against the debtors and GMAC, seeking to avoid GMAC's lien in the vehicle as an alleged preference under § 547(b). GMAC defends by claiming that it became perfected during the 20–day safe harbor provision of § 547(c)(3) and therefore, its lien may not be avoided and preserved by the trustee.

### ANALYSIS

■ At the outset, this Court is confronted with determining whether the provisions of former or revised Article Nine apply to the choice of law issue. The trustee relies upon the old multi-state transaction provision, former Kan. Stat. Ann. § 84–9–103(2)(b) (1996), in concluding that Kansas law controls the issue of GMAC's perfection. The trustee asserts that "[t]his case pre-dates 'new' Article 9." The new code provisions dealing with multi-state transactions are found at Kan. Stat. Ann. §§ 84–9–303, 84–9–316 (Supp. 2001). The Court notes that this adversary action was filed July 6, 2001, subsequent to the effective date of Article 9, as revised by the Kansas Legislature.[2]

2. *See* Kan. Stat. Ann. § 84–9–701 (Supp.2001) Revisor's Note (revised Article 9 became effective July 1, 2001).

KAN. STAT. ANN. § 84–9–702(c) (Supp. 2001) provides:

> This act [Article 9 as revised] does not affect *an action, case, or proceeding commenced* before this act takes effect. [Emphasis supplied].

If the "action, case, or proceeding" is commenced after the July 1, 2001 effective date, Article 9, as revised, applies. The Court must therefore determine as a preliminary matter whether the bankruptcy case filing (August 2, 2000) or the adversary case filing (July 6, 2001) is the controlling date for purposes of deciding whether the old or revised version of the multi-state transaction provision of Article 9 governs this preference dispute.

In an analogous case involving the enactment of the Bankruptcy Reform Act of 1994 ("1994 Act"), a bankruptcy court concluded that the bankruptcy case filing was the controlling date.[3] As in this case, the bankruptcy case was filed prior to the effective date of the 1994 Act but the adversary proceeding was filed after the effective date. In holding that the bankruptcy case filing was controlling, the bankruptcy court reasoned that the bankruptcy case includes adversary proceedings arising within the case:

> First American's argument, while disingenuous, does not pass muster. Although First American is correct that the word "case" is not synonymous with the term "adversary proceeding," neither are the words mutually exclusive. Generally, in the bankruptcy context, the word "case" is a term of art which

refers to "that which is commenced by the filing of a petition; it is the 'whole ball of wax,' the chapter 7, 9, 11, 12 or 13 case." 5 Collier on Bankruptcy ¶ 1109.02 (15th ed.1993). Adversary proceedings, on the other hand, are subactions which are raised within a "case" and are commenced by the filing of a complaint. [citations omitted] . . .

185 B.R. at 253.

The court also rejected the argument that an adversary proceeding was separate and distinct from a bankruptcy case.

First American admits in its brief that the 94 Act may not be applicable to this chapter 11 bankruptcy case, but argues that the amendment still controls this adversary proceeding by limiting the word "case" narrowly to the bankruptcy case itself and treating this adversary proceeding as an entirely separate action, such that even though the 94 Act would not apply to this chapter 11 case, it would still be applicable to this adversary proceeding. However, as stated above, "case" as traditionally used in the bankruptcy context, refers not only to that which is commenced by the filing of a petition, but also to all proceedings arising therein, such as this preference adversary proceeding.

No other result makes sense. There would be no adversary proceeding but for the filing of the case. . . .

185 B.R. at 254.[4]

This Court agrees with the *Blevins* case and others like it.[5] The Court therefore

---

**3.** *In re Blevins Elec., Inc.*, 185 B.R. 250 (Bankr.E.D.Tenn.1995).

**4.** *See also, In re Shearer*, 167 B.R. 153 (Bankr. W.D.Mo.1994) (rejecting contention that the case was commenced at the filing of the adversary complaint and noting that a case in bankruptcy is commenced by the debtor's filing of a bankruptcy petition, and any subse-

quent litigation involving the estate, is simply a part of the case as a whole).

**5.** *See Blevins*, 185 B.R. at 256, n. 10; *In re Republic Trust and Savings Co.*, 897 F.2d 1041, 1044–45 (10th Cir.1990) ("Were we to accept appellants' interpretation . . . different legal standards might apply in the same bank-

holds that the date of the bankruptcy case filing is the controlling date for determining whether the old or revised version of Article 9 should apply. Accordingly, this Court concludes that the case was commenced within the meaning of KAN. STAT. ANN. § 84–9–702(c) (Supp.2001) on August 2, 2000—the date the bankruptcy case was filed and therefore, the former multi-state provision of Article 9 governs.

### The Choice of Law Issue

The code provision dealing with multi-state transactions is KAN. STAT. ANN. § 84–9–103 (1996). It applies to multi-state transactions involving security interests in differing types of collateral. KAN. STAT. ANN. § 84–9–103(2) applies to goods covered by a certificate of title. It provides as follows:

(a) This subsection applies to goods covered by a certificate of title issued under a statute of this state or of another jurisdiction under the law of which indication of a security interest on the certificate is required as a condition of perfection.

(b) *Except as otherwise provided in this subsection,* perfection and the effect of perfection or nonperfection of the security interest are governed by the law ... of the jurisdiction issuing the certificate until four months after the goods are removed from that jurisdiction and thereafter until the goods are registered in another jurisdiction, but in any event not beyond surrender of the certificate. After the expiration of that period, the goods are not covered by the certificate of title within the meaning of this section.

(c) Except with respect to the rights of a buyer described in the next paragraph, *a security interest, perfected in another jurisdiction otherwise than by notation on a certificate of title, in goods brought into this state and thereafter covered by a certificate of title issued by this state is subject to the rules stated in paragraph (d) of subsection (1).*

KAN. STAT. ANN. § 84–9–103(1)(d), in turn provides:

When collateral is brought into and kept in this state while subject to a security interest *perfected under the law of the jurisdiction from which the collateral was removed, the security interest remains perfected,* but if action is required by part 3 of this article [6] to perfect the security interest, (i) if the action is not taken before the expiration of the period of perfection in the other jurisdiction *or the end of four months after the collateral is brought into this state, whichever period first expires,* the security interest becomes unperfected at the end of that period ...; (ii) if the action is taken before the expiration of the period specified in subparagraph (i), the security interest continues perfected thereafter; . . .

■ The trustee's argument for applying Kansas law focuses exclusively on subsection (2)(b). He argues that the law of the jurisdiction issuing the certificate of title applies and since only Kansas issued a certificate of title on the debtors' vehicle, the issue of perfection is governed by Kansas law. As the Court reads the language of subsection (2)(b), it contemplates the situation where the vehicle that is brought into this state is subject to a certificate of title issued by another state. In that instance, the law of the jurisdiction issuing

---

ruptcy case due to a trustee's decision to commence adversary proceedings on separate dates.'').

**6.** KAN STAT. ANN. § 84–9–302(3)(c) (1996) provides for perfection of a security interest in vehicles.

the certificate of title governs. This was the factual situation in *In re Trotter*[7] wherein Judge Robinson applied subsection (2)(b).

Subsection (2)(b) does not apply to these facts. Rather, these facts fit squarely under subsection (2)(c), because the debtors brought their vehicle from Oklahoma into Kansas *without* a certificate of title, and thereafter applied for and obtained a certificate of title issued by Kansas. Subsection (2)(c) is given only passing reference in the Official Comments where the drafters state:

> If a vehicle not described in the preceding paragraph (i.e., not covered by a certificate of title) is removed to a certificate state and a certificate is issued therefor, the holder has the same 4-month protection [as provided for in paragraph (1)(d) ] . . . .

KAN. STAT. ANN. § 84–9–103 (1996), cmt. ¶ 4(d). While respected scholars refer to this subsection as relating to the transfer of vehicles from states where certificates of title are not mandatory to certificate states,[8] nothing in the statute's wording suggests that its application is limited to such transfers or prevents its application to the circumstances presented here. In other words, if a creditor succeeds in having its lien noted on a certificate of title in the "first" state, it is rewarded by KAN. STAT. ANN. § 84–9–103(2)(b) (1996) by remaining perfected beyond the four months until the "second" state issues a certificate. If, as in this case, the secured creditor merely perfects without the issuance of a certificate, its perfection is limited in duration to four months.

Where a security interest in a vehicle has been perfected, but no certificate of title issued by the "first" state, KAN. STAT. ANN. § 84–9–103(2)(c) directs us to subsection (1)(d) of section 9–103 for the perfection rules. A reading of subsections (2)(c) and (1)(d) together requires this Court to determine whether GMAC's lien was perfected under Oklahoma law even though no certificate of title was issued by Oklahoma. If so, upon removal of the vehicle to Kansas, GMAC had four months in which to re-perfect its security interest under Kansas law and to comply with KAN. STAT. ANN. § 84–9–302(3)(c). If GMAC's lien was noted on a certificate of title subsequently issued by Kansas (within the four month period), GMAC was continuously perfected. If not, GMAC's lien became unperfected upon the expiration of the four month period. Accordingly, the Court will now examine whether GMAC's lien was perfected under Oklahoma law in the absence of a certificate of title issued by the Oklahoma authorities.

### Perfection Under Oklahoma Law

The trustee argues that no certificate of title was issued by Oklahoma and there has not been substantial compliance with the requirements for perfection. The trustee further claims that the application for an Oklahoma certificate of title was defective because it was not signed by the debtors. GMAC argues that it became perfected upon issuance of the lien receipt by the Oklahoma authorities and that it substantially complied with the legal requirements for perfecting its security interest in the debtors' vehicle.

 Under Oklahoma law, perfection of a security interest in a motor vehicle is

---

**7.** 264 B.R. 216 (Bankr.D.Kan.2001).

**8.** *See* 4 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 31–32 (4th ed.2002); BARKLEY CLARK, THE LAW OF SECURED

TRANSACTIONS UNDER THE UNIFORM COMMERCIAL CODE, ¶ 12.03 (rev'd ed.2002); *In re Toderian,* 151 B.R. 467 (Bankr.M.D.Tenn.1992).

governed by OKLA. STAT. tit. 47, § 1110, which provides, in relevant part:

A.1.... a security interest in a vehicle as to which a certificate of title may be properly issued by the Oklahoma Tax Commission *shall be perfected only when* a lien entry form, and the existing certificate of title, if any, or application for a certificate of title and manufacturer's certificate of origin containing the name and address of the secured party and the date of the security agreement and the required fee *are delivered* to the Tax Commission or to a motor license agent.... When a vehicle title is presented to a motor license agent for transferring or registering and the documents reflect a lien holder, the motor license agent shall perfect the lien pursuant to subsection G of Section 1105 of this title....

2. Whenever a person creates a security interest in a vehicle, the person shall surrender to the secured party ... the signed application for a new certificate of title, on the form prescribed by the Tax Commission, and the manufacturer's certificate of origin. The secured party shall deliver the lien entry form and the required lien filing fee within twenty-five (25) days as provided hereafter with ... the application for certificate of title and the manufacturer's cer-

tificate of origin to the Tax Commission or to a motor license agent. *If the lien entry form, the lien filing fee and the ... application for certificate of title and the manufacturer's certificate of origin are delivered to the Tax Commission or to a motor license agent within twenty-five(25) days after the date of the lien entry form, perfection of the security interest shall begin from the date of the execution of the lien entry form ...* [Emphasis supplied].

Thus, under Oklahoma law, a secured party can perfect its lien in the vehicle prior to issuance of the certificate of title.[9] In short, the secured party becomes perfected *upon delivery* of the following documents to the Tax Commission or motor license agent: a lien entry form, an application for certificate of title; a manufacturer's statement of origin; and the lien filing fee.[10] In the instant case, all of the above documents were delivered to a motor license agent on May 24, 2000, at which time the motor license agent accepted the documents and issued a "lien receipt" form.[11] The lien entry form and the application for certificate of title both clearly indicate the existence of a lien, the identity of the secured party, and the name and address of the debtors.

---

9. It appears a certificate of title was never issued by Oklahoma because the debtors never registered the vehicle in Oklahoma and paid fees. The debtors had 30 days from the date of purchase to register the vehicle and pay applicable fees and taxes. Only upon the registration and payment of fees and taxes would a certificate of title have been issued by Oklahoma. Because the debtors lived in Kansas and the vehicle had already been taken back to Kansas, the debtors would have had no reason to register the vehicle in Oklahoma. *See* OKLA. STAT. tit. 47, § 1110A.4 and A.7.

10. *Liberty National Bank and Trust Co. Of Oklahoma City v. Garcia,* 686 P.2d 303, 306 (Okla.App.Ct.1984) (In a case where the tax-

ing authorities failed or neglected to note the creditor's lien on the certificate of title it issued, creditor was not left unperfected; the perfection of a security interest in a vehicle under Oklahoma law is accomplished where the required forms and fees are placed in the possession of the Oklahoma Tax Commission or a motor license agent.).

11. The requisite documents were delivered May 24, 2000, within 25 days of the lien entry form, and therefore, GMAC was perfected as of May 13, 2000—the date of execution of the lien entry form. *See* OKLA. STAT tit. 47, § 1110A.2.

The trustee, however, citing to subsection A.2. of § 1110, contends that the debtors' failure to *sign* the application for certificate of title is fatal to GMAC's perfection in Oklahoma. The Court would observe that there is no reference in the language of subsection A.1. to a "signed application" in order for *perfection* to occur.

In any event, the Court concludes that the debtors' failure to sign the application for certificate of title, even if required for perfection, is not fatal because GMAC substantially complied with the statutory requirements for perfection. The Oklahoma courts have recognized the substantial compliance doctrine in similar circumstances and the Court finds those cases persuasive.[12] Here, where all of the essential information (*i.e.* existence of lien, description of vehicle, GMAC as secured party, and name and address of debtors) is available to any interested party searching the records in Oklahoma, the failure to have the debtors' signature on the application for certificate of title is a minor defect, not seriously misleading, and not fatal to GMAC's perfection in Oklahoma.[13]

■ Having concluded that GMAC perfected its lien under Oklahoma law no later than May 24, 2000, the Court further concludes under KAN. STAT. ANN. § 84–9–103(1)(d) and § 84–9–302(3)(c) that GMAC perfected its lien under Kansas law within four months from the time the vehicle arrived in Kansas. In short, GMAC has been *continuously* perfected since May 24, 2000.

## CONCLUSION

Applying the former Kansas multi-state transaction provision of KAN. STAT. ANN. § 84–9–103 (1996), the Court concludes that the facts of this case fall under subsection (2)(c), rather than (2)(b), and the Court must first look to Oklahoma law to determine whether GMAC perfected its lien under Oklahoma law. For the reasons set forth above, the Court concludes that GMAC became perfected under Oklahoma law no later than May 24, 2000, when it delivered the required documents and fee to the motor license agent and received a lien receipt. GMAC was thereafter continuously perfected under KAN. STAT. ANN. § 84–9–103(1)(d) and KAN. STAT. ANN. § 84–9–302(3)(c) when Kansas issued a certificate of title noting GMAC's lien thereon. Accordingly, GMAC easily falls within the twenty-day safe harbor provision of § 547(c)(3).[14] The Court holds that the trustee may not avoid and preserve GMAC's lien in the debtors' vehicle. Judgment should be entered for General Motors Acceptance Corporation on the trustee's preference complaint and a Judgment on Decision shall enter this day.

---

**12.** *See e.g., In re Hembree,* 635 P.2d 601 (Okla. 1981) (omission of secured party's signature on lien entry form was not fatal to perfection of security interest in vehicle); *In re Suddarth,* 232 B.R. 789 (N.D.Okla.1999), *aff'd* 201 F.3d 449, 1999 WL 1188835 (10th Cir.1999) (omission of date of security agreement from the lien entry form did not invalidate the lien); *In re Casee,* 2000 WL 33800188 (Bankr. N.D.Okla. July 12, 2000) (following *Suddarth* ).

**13.** *Hembree, supra* at 603–04 (Policy underlying perfection and recordation of security interests is to provide notice); *Suddarth, supra* at 792. (substantial compliance standard under UCC also applies to perfection of security interests in vehicles; substantial compliance is achieved if the deviation from the strict requirements of the perfection statute do not seriously mislead.).

**14.** The parties stipulated that the vehicle was purchased on May 13, 2000 and arrived in Kansas on May 19 or May 20.